## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

MAURICE WOODARD,

        Petitioner,

v.                                 Case No.  4:17-cv-258-WS/MJF

SECRETARY, DEPARTMENT OF
CORRECTIONS,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Maurice Woodard has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1), with supporting memorandum (Doc. 2). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 17). Woodard replied. (Doc. 19). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Woodard is not entitled to habeas relief.[1]

_____

[1] This case was referred to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

I.    **Background and Procedural History**[2]

On October 27, 2004, Petitioner Woodard called Marvin Cannon mid-evening and asked Cannon if he wanted to "pull a lick with him"—a colloquialism for robbing someone. Cannon agreed. Woodard did not give Cannon any details about the robbery, but merely instructed Cannon that his role was to provide transportation. Cannon obliged, borrowed his sister's car, and drove to pick up Woodard.

Woodard, in the meantime, called his robbery target Ephram Hagins and, claiming to be Marvin Cannon, told Hagins that he was interested in buying drugs. Hagins was acquainted with Cannon because the two previously had attended school together. Although Hagins did not recognize the caller's voice, Hagins assumed it was Cannon based on Woodard's misrepresentation of his identity. Hagins told Woodard (still believing he was Cannon), that he would make some phone calls.

Marvin Cannon picked up Woodard and Alfred Denson around 9:00 or 9:30 p.m.[3] Woodard and Denson entered the car with a black bag. Woodard spoke to

---

[2] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. (Doc. 17, Attachs. 3-4, Exs. B5A-B5C (trial transcript)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

[3] Alfred Denson, Jr. was tried as a co-defendant along with Woodard, but was acquitted.

Hagins on the phone (with Hagins still believing he was speaking to Cannon), and the pair agreed to meet at a store behind Hagins's apartment complex in Tallahassee, Florida. This area had a BP gas station, a Circle K, a Jamaican Way store, and a Wing Zone restaurant.

Woodard and Denson took ski masks out of their black bag. Cannon drove them to the Wing Zone. As he drove, he noticed that Woodard, who was sitting in the front passenger seat, also removed a gun from the black bag.

After Cannon parked, Woodard instructed Cannon: (1) to position himself near the trash can in front of the Jamaican Way store which was next to the Circle K, (2) to wait there for the victim, (3) that the victim would approach Cannon, (4) that the victim was a large, black, bald-headed man known as "E", and (5) that once Cannon and the intended victim made contact, Cannon should show the victim money and discuss drugs. Cannon agreed, still not knowing the intended victim's identity or that he and the intended victim were acquainted.

Hagins arrived at the shopping plaza between 10:30 and 11:00 p.m., parked in front of the Jamaican Way store, and went into the Circle K. Woodard called Cannon and informed him that the intended victim had arrived. When Hagins came out of the store, Cannon asked Hagins if he was "E." Hagins responded affirmatively. Cannon then recognized Hagins from school. Cannon asked Hagins if

he had any drugs. Hagins replied no, but got on his cell phone and returned to his car to make phone calls. Cannon waited outside Hagins's car.

Within minutes, Woodard and Denson ran up behind Hagins's car. Hagins looked up from inside his car and saw the pair. Woodard was wearing all black clothing including a black ski mask. Denson was wearing a sweater-looking shirt with a hood. Woodard and Denson each had a firearm.

Hagins tried to get out of his car, but Woodard hit Hagins in the face with his gun. Woodard, Denson and Cannon then pushed Hagins back inside his car. Woodard ordered Hagins into the passenger seat and demanded Hagins's car key. Hagins complied, and Woodard got in the driver's seat. Denson got in the back seat. Cannon remained outside.

Woodard drove Hagins's car out of the shopping plaza and onto a highway. Five to six miles later, Woodard stopped and ordered Hagins from the car at gunpoint. Woodard and Denson tied Hagins with speaker wire from the car and left him on the side of the road. Hagins eventually freed himself and flagged down a passerby. Hagins informed the police that Cannon was one of the attackers. Hagins was taken to the hospital and treated for head injuries.

Cannon, in the meantime, drove to his sister's house and waited to hear from Woodard. Between 30 to 60 minutes after Cannon left the shopping plaza, Woodard

called Cannon. Woodard initially had tried to reach Cannon by calling Cannon's mother's home. Woodard made both calls from Hagins's cell phone.

Hagins testified at trial that the last time he used his cell phone was at the shopping plaza during his encounter with Cannon outside the Jamaican Way. During the carjacking, Hagins dropped his cell phone in the car, and he saw Woodard use it. Hagins also recalled that his cell phone remained in the car after Woodard forced him out. Hagins's cell phone records confirmed that Woodard called not only Cannon from Hagins's cell phone, but also Woodard's then-girlfriend Shontecia Murray.

Woodard was charged in Leon County Circuit Court Case No. 2004-CF-3842, with three crimes: Armed Carjacking; Kidnapping to Facilitate Felony with a Firearm; and Aggravated Battery with a Firearm. (Doc. 17, Attach. 1, Ex. B1, p. 2 (third amended information), pp. 3-8 (complaint/probable cause affidavit)).[4] Woodard and co-defendant Denson's first trial ended in a mistrial due to a hung jury. (*See* Doc. 17, Attach. 9, Ex. F1, p. 47).

---

[4] Where a page of an exhibit bears more than one page number, the undersigned cites the number appearing at the bottom right corner of the page.

Woodard and Denson were re-tried on June 12-14, 2006. The State presented testimony from Hagins, Cannon, law enforcement officers, the custodian of Hagins's cell phone records, and Shontecia Murray. The State also introduced records from Mr. Hagins's cell phone confirming Woodard's various calls. The State introduced inculpatory letters Woodard wrote to his sister and to a co-inmate at the Leon County Jail (Derrick Holmes) after the first trial. The letters directed them to memorize a particular story to support Woodard's defense and discredit Cannon's anticipated trial testimony. Woodard's defense theory was that the two masked carjackers were Cannon's cousins whom Cannon was trying to protect by implicating Woodard and Denson. The jury found Woodard guilty of all three crimes as charged. (Doc. 17, Attach. 2, Ex. B3, pp. 446-50 (verdict)).

The trial court adjudicated Woodard guilty and sentenced him as a Prison Releasee Reoffender to life in prison. (Doc. 17, Attach. 2, Ex. B3, pp. 458-67 (judgment and sentence); Ex. B6 (transcript of sentencing).[5] The Florida First District Court of Appeal ("First DCA") affirmed on August 5, 2008, *per curiam* and without written opinion. *Woodard v. State*, 995 So. 2d 500 (Fla. 1st DCA 2008)

---

[5] The court sentenced Woodard to concurrent terms of life in prison for the carjacking, life in prison for the kidnapping, and 15 years in prison for the aggravated battery.

(Table) (copy at Doc. 17, Attach. 5, Ex. B9). Woodard's motion for rehearing was denied on November 10, 2008. (Doc. 17, Attach. 5, Ex. B11).

On November 9, 2009, Woodard filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he twice amended. (Doc. 17, Attach. 6, Ex. E1, pp, 1-48 (original motion); Ex. E1, pp. 49-59 (amended motion); Ex. E1, pp. 77-118 (second amended motion)). The state circuit court ordered an evidentiary hearing and appointed counsel to assist Woodard. (Doc. 17, Attach. 6, Ex. E1, pp. 139, 140-47).

Woodard's postconviction evidentiary hearing was held on January 11, 2013. (Doc. 17, Attach. 7, Ex. E2). At the close of the hearing, the state circuit court denied relief, explaining its reasons on the record. (Doc. 17, Attach. 7, Ex. E2, pp. 266-71 (evidentiary hearing transcript)). The circuit court entered a written final order that day which stated, in relevant part: "Based on the reasons as announced on the record, the court finds that defendant has failed to show that he received ineffective assistance of counsel or that he was prejudiced by any alleged deficiency." (Doc. 17, Attach. 6, Ex. E1, p. 180). The First DCA affirmed *per curiam* without written opinion on July 29, 2014. *Woodard v. State*, 147 So. 3d 991 (Fla. 1st DCA 2014) (Table) (copy at Doc. 17, Attach. 9, Ex. E6). The mandate issued August 26, 2014. (Doc. 17, Attach. 9, Ex. E7).

While his first postconviction appeal was pending, Woodard filed a second Rule 3.850 motion on October 24, 2013, alleging that he had "newly discovered evidence" of his innocence. Woodard explained that Marvin Cannon recanted his trial testimony. (Doc. 17, Attach. 9, Ex. F, pp. 1-19). The state circuit court ordered an evidentiary hearing and appointed counsel to assist Woodard. (Doc. 17, Attach. 9, Ex. F1, pp. 24-35). The evidentiary hearing was held on April 9, 2015. (Doc. 17, Attach. 9, Ex. F1, pp. 52-149 (evidentiary hearing transcript)). On August 12, 2015, the state circuit court denied relief by written order. (Doc. 17, Attach. 9, Ex. F1, pp. 47-50). The First DCA affirmed *per curiam* without written opinion on March 23, 2017. *Woodard v. State*, 224 So. 3d 218 (Fla. 1st DCA 2017) (Table) (copy at Doc. 17, Attach. 12, Ex. F6). The mandate issued April 18, 2017. (Doc. 17, Attach. 12, Ex. F7).

Woodard filed his *pro se* federal habeas petition on May 26, 2017, (Doc. 1). Woodard's petition raises five claims of ineffective assistance of trial counsel, and one claim of actual innocence. (Doc. 1, pp. 4-6 in ECF; Doc. 2). The State asserts that Woodard is not entitled to habeas relief on any claim because each claim is either procedurally defaulted, devoid of merit, or both. (Doc. 17, pp. 7-55).

## II.    Governing Legal Principles

### A.    Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[6] In *Williams*, Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[6] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary to" federal law only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean

the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . .  because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of the petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

### B.   Clearly Established Federal Law Governing Claims of Ineffective Assistance of Counsel

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984).

The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## III.    Discussion

**Ground One**          **"Denial of Effective Assistance of Counsel, in Violation of Sixth and Fourteenth Amendment Right of the United States and Florida Constitution, by Counsel's Failure to Conduct an Adequate Pre-Trial Investigation, Interview and Depose Terrell Powell, Derick Holmes, and Canary Denson, and for Failure to Move to Suppress Unlawfully Seized Evidence." (Doc. 1, p. 4)**

Woodard claims that his trial counsel, Attorney John Kenny, was ineffective for failing to interview three witnesses: Terrell Powell, Derrick Holmes, and Canary Denson. (Doc. 1, p. 4 in ECF). Woodard also claims that Attorney Kenny was ineffective for failing to move to suppress "unlawfully seized evidence," namely, the letters he wrote to his sister and Derrick Holmes. (*Id*.).

The State asserts that Woodard's claim is partially procedurally defaulted, because although Woodard raised all of these issues in his second amended Rule 3.850 motion, he abandoned two issues (counsel's failure to investigate Canary Denson and failure to file a motion to suppress) by failing to raise them in his counseled postconviction appeal. Accordingly, these aspects of Woodard's claim are procedurally defaulted. (Doc. 17, pp. 9-11). The State argues in the alternative that even assuming to Woodard's benefit that he properly exhausted all aspects of this

claim, he is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 17, pp. 26-32).

Woodard replies that he did not abandon any aspect of this claim in his postconviction appeal; that his appellate brief "was filed pro se with sufficient facts to state a claim", and that nothing in the First DCA's summary decision indicates that it deemed any part of the claim waived. (Doc. 19, pp. 3-4).

### A.    Woodard Procedurally Defaulted His Sub-Claims Involving Canary Denson and Motion to Suppress

Before bringing a § 2254 habeas action, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard*, 404 U.S. at 277-78.

A claim that was not properly exhausted in state court and can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,*

procedurally barred from federal review. *Boerckel*, 526 U.S. at 839-40, 848; *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas . . . ." (citations omitted)). A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Florida's established postconviction process includes an appeal from an order denying postconviction relief. *See* Fla. R. App. P 9.141(b)(3); *see also Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979); *Rodwell v. Singletary*, 114 F. Supp. 2d 1308, 1312 (M.D. Fla. 2000). Where, as here, a defendant appeals from an order denying postconviction relief after an evidentiary hearing, he is required to file an initial brief. Fla. R. App. Proc. 9.141(b)(3)(C). Issues not raised and argued in the initial brief are abandoned. *See Atwater v. Crosby*, 451 F.3d 799, 809-10 (11th Cir. 2006) (citing *Shere v. State*, 742 So. 2d 215, 217 n.6 (Fla. 1999) (recognizing Florida's rule that an issue raised in an appellate brief which contains no argument is abandoned)); *see also Duest v. Dugger*, 555 So. 2d 849, 851 (Fla. 1990) (holding

that issues raised on appeal from an order denying postconviction relief were procedurally barred when petitioner received an evidentiary hearing and failed to fully brief and argue the points on appeal).

The state court record establishes that Woodard's second amended Rule 3.850 motion raised counsel's ineffectiveness concerning Terrell Powell as Ground 1-B; counsel's ineffectiveness concerning Canary Denson as Ground 1-C; counsel's ineffectiveness concerning Derrick Holmes as Ground 1-D; and counsel's ineffectiveness concerning the motion to suppress as Ground 1-E. (Doc. 17, Ex. E1, pp. 80-91). The state circuit court denied relief on all grounds after an evidentiary hearing. Woodard appealed, and his postconviction counsel filed an initial brief. (Doc. 17, Ex. E4). The initial brief, however, raised only one argument concerning Ground 1, namely, that the circuit court erred by failing to resolve Ground 1-B (concerning Powell) and Ground 1-D (concerning Holmes). (Doc. 17, Ex. E4, pp. i-iii (Table of Contents), 2-6 (Statement of the Facts), 11-13 (Points of Argument on Appeal and Summary of Argument), and 37-38 (Argument)). Woodard excluded from his brief the ineffective assistance claims concerning Canary Denson (Ground 1-C) and the motion to suppress (Ground 1-E). The First DCA summarily affirmed.

Woodard's failure to invoke one complete round of Florida's established appellate review process—by abandoning Grounds 1-C and 1-E on appeal—renders

them unexhausted. Because any further attempt by Woodard to exhaust those issues

in state court would be futile, Grounds 1-C (concerning Denson) and 1-E

(concerning the motion to suppress) are procedurally defaulted. *See Boerckel*, 526

U.S. at 848 (holding that Alabama's established appellate review process provided

for discretionary review in the state supreme court, and that petitioner's filing of a

discretionary review petition but leaving out three issues he later included in his

federal habeas petition rendered the issues unexhausted and procedurally defaulted);

*Coleman*, 501 U.S. at 735 n.1; *Sims v. Singletary*, 155 F.3d 1297, 1311 (11th Cir.

1998) ("Sims abandoned the photograph component of this claim on appeal of the

denial of his motion for post-conviction relief. Therefore, this portion of the

argument is procedurally barred for federal habeas purposes." (citing *Lindsey v.

Smith*, 820 F.2d 1137, 1143 (11th Cir.1987))); *see also, e.g.*, *Baker v. Dep't of Corr.,

Sec'y*, 634 F. App'x 689, 693 (11th Cir. 2015) (holding that the habeas petitioner's

substantive double jeopardy claim—which was rejected on the merits by the

postconviction trial court—was procedurally defaulted on habeas review because

the petitioner abandoned the claim in his postconviction appeal by failing to argue it in his counseled initial brief or in his *pro se* brief).[7]

Woodard makes none of the requisite showings to excuse his procedural default. Woodard's procedural default bars habeas review of his claims that counsel was ineffective for failing to investigate Canary Denson and failing to file a motion to suppress.

> **B.    Woodard Is Not Entitled To Habeas Relief On His Sub-Claims Involving Terrell Powell and Derrick Holmes**

> **i.    Terrell Powell**

Woodard alleges that Marvin Cannon "told him that Terrell Powell was one of the perpetrators involved in the alleged crime" and that Powell was being held in the Gadsden County Jail. (Doc. 2, p. 14). Woodard claims he gave trial counsel this information and asked him to interview Powell, but counsel failed to investigate the matter. (*Id*., pp. 14-15). Woodard contends that "[t]he failure to investigate matters and learn the facts effectively deprived the Petitioner of the right to place evidence before the jury that could have made the difference in the verdict of guilty to not

_____

[7] The undersigned cites *Baker* only as persuasive authority and recognizes that unpublished opinions are not considered binding precedent. *See* 11th Cir. R. 36-2.

guilty." (*Id*., p.p. 15-16). The State asserts that Woodard is not entitled to federal habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 17, pp. 26-30).

Woodard presented this claim to the state courts as Ground 1-B of his second amended Rule 3.850 motion. The state circuit court held an evidentiary hearing and appointed counsel to assist Woodard. At the hearing, Woodard did not call Powell to testify. Woodard offered only his own speculative testimony:

Q [Postconviction counsel]: And, to your knowledge, Mr. Kenny failed or did not interview Terrell Powell?

A [Woodard]: He failed to even attempt to do it, sir.

Q:  Okay. And it's your belief that Mr. Powell would have testified how?

A:  In my belief I believed that he would have testified that I had nothing to do with it.

Q:  And do you believe that he would have been able to identify who the perpetrators of the robbery were?

A:  Yes, sir.

Q:  Now, I got lost a little bit. What's the interplay there with Marvin Cannon? Explain that for us.

A:  The interplay? I'm lost.

Q:  Okay. The – in that allegation, you indicate that Mr. Kenny needed to interview Marvin Cannon or – and Terrell Powell. I'm not entirely clear how Marvin Cannon is or was involved. Can you explain that?

A:  Marvin Cannon is my codefendant. I mean, I don't understand.

Q:  Okay. And that may clear it up. In other words, Mr. Powell would have been able to – he would have implicated Marvin Cannon and other people other than yourself; is that what you're saying?

A:  Possibly, yes sir.

(Ex. E2, pp. 207-08).

Woodard's trial counsel, Attorney Kenny, also testified at the hearing. When asked about Terrell Powell, counsel initially did not recall him. After his recollection was refreshed, counsel testified that: (1) Woodard asked him to talk to Powell; (2) counsel instructed his associate, Attorney Peskin, to talk to Powell; (3) Peskin interviewed Powell at the Gadsden County Jail; and (4) Powell denied any knowledge of Woodard and also denied being present during the commission of the offenses. (Ex. E2, pp. 233-34, 245-46). Attorney Kenny explained:

Q [Woodard's Postconviction Counsel]:   Mr. Kenny . . . what investigation did you or your office undertake as it relates to Terrell Powell, the gentleman in the Gadsden County Jail that was mentioned as a witness?

A [Attorney Kenny]:   Yes, sir. And by reviewing some of the information, including the complaint filed by Mr. Woodard, I did not individually speak with Mr. Powell and I think I told Mr. Woodard that as well. However, there was court over in Gadsden, which [sic]

> handling a lot of conflict cases we had over there, and Ms. Peskin was covering something for me. She went to the Gadsden County Jail. My recollection was she did not prepare me anything on it, because Mr. Powell denied knowledge of Mr. Woodard, knowledge of the individuals or being around there that night. It perplexed me as to why he was listed as a State witness. It may have been out of an abundance of caution they put him, but as my recollection was they never used him either, but he denied anything or any knowledge.

(Ex. E2, p. 247).

At the close of the hearing, the state court ruled that Woodard failed to establish "that there was any lack of investigation" or that he was prejudiced. (Ex. E2, p. 267). Woodard argued the issue on appeal. The First DCA summarily affirmed. (Ex. E6).

The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99, 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). In light of the testimony at the state postconviction evidentiary hearing and the state court's implicit finding that Attorney Kenny's testimony was credible, it was neither contrary to, nor an unreasonable application of *Strickland* to conclude that Woodard failed to establish deficient performance and prejudice. Trial counsel

investigated Terrell Powell, but Powell provided no information helpful to the defense. Woodard is not entitled to federal habeas relief on this sub-claim.

### ii.    Derrick Holmes

With regard to Holmes, Woodard's petition faults counsel for "failing to conduct an adequate pre-trial investigation, interview and depose" Derrick Holmes. (Doc. 1, p. 4). Woodard makes no effort, however, to enlighten this court why this omission deprived him of his right to effective assistance of counsel. Neither Woodard's petition, his supporting memorandum, nor his reply provides any allegation supporting his claim concerning Derrick Holmes. (*See* Doc. 1; Doc. 2, pp. 13-16; Doc. 19).

Although *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys, the burden of properly identifying a claim and alleging supporting facts rests with the petitioner. *See, e.g.*, *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (holding that a habeas petitioner's allegations "must be factual and specific, not conclusory," and that "[c]onclusory allegations are simply not enough"). This Court is not required to cull the record in search of facts supporting Woodard's claim.

As the court explained in *Chavez*, all of the principles of law governing pleading requirements, the burden of proof and the granting of evidentiary hearings

in federal habeas cases "would mean nothing if district courts were required to mine the record, prospecting for facts that the habeas petitioner overlooked and could have, but did not, bring to the surface in his petition." *Chavez*, 647 F.3d at 1061. The court went on: "Making district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him." *Id*. at 1061. The court in *Chavez* concluded: "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record." *Id*.

Where, as here, "a habeas petition does not allege enough specific facts that, if they were true, would warrant relief, the petitioner is not entitled to an evidentiary hearing" or federal habeas relief. *Chavez*, 647 F.3d at 1060; *Allen v. Sec'y Fla. Dep't of Corr.*, 611 F.3d 740, 763 (11th Cir. 2010) ("Having alleged no specific facts that, if true, would entitle him to federal habeas relief, Allen is not entitled to an evidentiary hearing."). Woodard's conclusory assertion that counsel was ineffective for failing to investigate Derrick Holmes does not warrant federal habeas relief.

Even giving Woodard the benefit of gleaning his supporting facts from the record of his second amended Rule 3.850 motion, his claim still fails. Woodard's

postconviction motion alleged that Holmes was housed with him at the Leon County

Jail. During this confinement:

> Ho[l]mes wrote an affidavit that stated that the defendant had written him a letter concerning details of the alleged offense.

> Defendant informed counsel that he did not give Ho[l]mes the letter, but he did wr[i]te the letter. At that time, defendant didn't know exactly how Ho[l]mes actually obtained the letter, because defendant had placed the letter inside a legal envelope filled with legal documents.

> Defendant later learned that Holmes obtained the letter by entering the defendant's cell while defendant was going to court. Holmes violated Leon County Jail rules and regulations by entering a cell he's not assigned to. Counsel was informed of these details.

(Ex. E1, pp. 85-86). Woodard faults trial counsel for failing to depose Holmes.

Woodard claims that "had counsel deposed Holmes, counsel could have obtained a

confession from Holmes that he unlawfully seized the evidence (letters), in that, it's

clear that the unlawfully seized evidence would not have been permitted to enter into

evidence." (*Id*., p. 86). Holmes did not testify at Woodard's trial, but the two letters

Woodard wrote Holmes were admitted into evidence. (Doc. 17, Ex. B5B, pp. 301-

310).[8]

---

[8] Woodard's letters, in Woodard's own words, gave Holmes a "story" to "memorize" to corroborate Woodard's defense. (Ex. B5B, pp. 307-10).

At the state postconviction evidentiary hearing, Woodard did not call Derrick Holmes to testify. Woodard was asked why he believed Attorney Kenny was ineffective with regard to the Holmes letters:

> Q [Woodard's Post Conviction Counsel]:   And if you can explain for the Court what do you believe Mr. Kenny was ineffective in doing as it relates to that letter?
>
> A [Woodard]:  He – he failed to get on the record – he failed to depose Holmes, to get on the record how Holmes possessed, came in possession of the letters, because I told Mr. Kenny that I did write – that I did write the note. It was my handwriting. I couldn't deny that.
>
> Q:   Meaning, Mr. Kenny didn't investigate whether Mr. Holmes had been directed by somebody in law enforcement or from the state attorney's office to obtain it?
>
> A:  Yes, sir.

(Ex. E2, p. 210). Woodard admitted on cross-examination that he had no information indicating that the letters were obtained through State misconduct. (Ex. E2, p. 221).

Woodard's trial counsel, Attorney Kenny, testified at the evidentiary hearing that the State provided the letters to him three months prior to trial, and that he forwarded them to Woodard. Kenny testified:

> He [Woodard] wrote back to me at the end of January, early February, saying these letters are illegally obtained. He didn't say how. I was reviewing his correspondence last night, but his letter to me was that they were stolen and then he didn't indicate if they were taken to the state attorney's office or how the state attorney's office got a hold

of them, just that they were stolen. That they were, therefore, illegally
obtained evidence and I should move immediately to exclude them.

Q [Assistant State Attorney Ray]:  Okay. What was so troublesome as
an attorney in your evaluation of those letters that were written by the
defendant?

A [Attorney Kenny]:  Well, first, it – I mean, in speaking with Mr.
Woodard, who never denied the letters were his, they were handwritten
and they were basically an outline to individuals he is talking to saying,
Hey, I've looked at it, based upon what they're saying, this timeline is
wrong. We need to say it's more like this. And it just gives a straight
implication that he was trying to either falsify testimony and/or make
witnesses change their story to fit his alibi and/or defense.

(Ex. E2, pp. 226-27). Attorney Kenny directed his associate, Attorney Peskin, to

determine whether there was a legal basis to exclude or suppress letters stolen by a

third party. Peskin concluded, and Kenny concurred, that the defense "did not really

have grounds to move for anything" concerning the letters. (Ex. E2, p. 228).

Attorney Kenny was asked:

Q [Assistant State Attorney Ray]:  Do you have any good faith
basis to believe with any of the information that you had, either through
the letters or any discovery or any discussions or correspondence with
the defendant, that the State of Florida orchestrated [this] somehow[,]
knowing that the defendant had written and sent these letters and some
agent of the State stolen them and presented them to the State of
Florida?

A [Attorney Kenny]:  I didn't have any reason to believe that.

(Ex. E2, pp. 229-30).

At the close of the postconviction evidentiary hearing, the state court ruled: "As to Derrick Holmes, I don't find it [sic] any ineffective assistance of counsel was proven nor that any prejudice has been shown. . . . There's been nothing presented here today suggesting that Mr. Holmes has any testimony to present. There's a total absence of any showing of prejudice. I also find there was a lack of ineffective assistance of counsel." (Ex. E2, p. 267). Woodard argued the issue on appeal. The First DCA summarily affirmed. (Ex. E6).

The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99, 100. Based on the record before the state court, fairminded jurists can concur in the First DCA's conclusion that Woodard failed to establish either prong of *Strickland*'s two-part standard, much less both of them.

Woodard admitted that he authored the letters and that they were intended for Holmes. Woodard's suggestion that Holmes obtained, without his consent, the letters Woodard **wrote to him**, is wholly incredible. But even assuming Holmes "stole" the letters without Woodard's consent, Woodard failed to establish a reasonable probability that deposing Holmes would have produced a meritorious basis to suppress the letters. Woodard's speculation that the State *could have* been involved in directing Holmes to steal them, is not enough. Woodard offered the state

court no testimony or evidence remotely suggesting (much less raising a reasonable probability) that a deposition of Holmes would had revealed prosecutorial or law enforcement misconduct. Woodard is not entitled to federal habeas relief on this sub-claim.

> **Ground Two**     **"Denial of Effective Assistance of Counsel, in Violation of Sixth and Fourteenth Amendment of the United States and Florida Constitution, by Trial Counsel's Failure to Raise a Contemporaneous Objection to Prosecutor Eliciting Testimony of Shontecia Murray to Introduce Collateral Act Evidence, and for [sic] to Raise a Contemporaneous Objection." (Doc. 1, p. 4)**

Woodard claims that trial counsel was ineffective for failing to object, during Woodard's **first** trial, to the prosecutor eliciting testimony from State's witness Shontecia Murray that she had a sexual relationship with Woodard.[9] Woodard contends that counsel's failure to object prejudiced him in his **second** trial, because when counsel moved *in limine* to prohibit the State from engaging in that line of questioning, the trial court denied the motion because counsel failed to object during the first trial. Woodard explains:

> Shontecia Murray testified during Petitioner's first trial. On [c]ross examination, the Prosecutor attacked Ms. Murray's character by inquiring about her age and sex life. Specifically, the prosecutor made

---

[9] Apparently, Ms. Murray was a minor at the time.

the witness' sexual relationship with Petitioner the feature of the trial without an objection from defense counsel.

Eventually, the trial resulted in a hung jury and a new trial was scheduled. During the retrial, counsel decided to file motion in limine. One of the things counsel argued was to prevent the Prosecutor from making the witness' sexual relationship with the Petitioner a feature of the trial under the pretext of showing a motive to lie.

In light of the fact that counsel failed to object to the line of cross-examination during the first trial, the Judge allowed the Prosecutor to continue to attack Ms. Murray's character once again, based on defense counsel's failure to object to the cross-examination during the first trial.

(Doc. 2, pp. 16-17). The State asserts that Woodard is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 17, pp. 33-37).

Woodard presented this claim to the state courts as Ground 2 of his Rule 3.850 motion. The state circuit court denied relief for these reasons:

As to the Murray relationship, the – Mr. Kenny did file a motion in limine to exclude the testimony. The Court denied. In his motion, Mr. Woodward [sic] claims that the Court said he denied it, because it came out in the first trial. That was why I wanted to make sure I looked at the transcript. That's simply not true. That's not – the judge doesn't say anything to that effect. Apparently, Mr. Kenny was surprised by it in the first trial and in preparation for the second trial, he filed a motion in limine.

Frankly, I'm not crystal clear on the preservation argument. I accept Mr. Morris' [Woodard's postconviction counsel] representation that the case says that it would not be proper preservation. Frankly, I think there's some cases to the contrary. I think it's kind of a murky area of the law, frankly, as to what has to be done to preserve.

But I think beyond that, Mr. Kenny says he made a strategic decision not to highlight in front of the jury. I don't think that's an unreasonable decision. But even more clearly, I don't see where there was any basis for the Court to have ruled otherwise. Certainly the relationship between the defendant and one of his alibi witnesses is fair game.

(Ex. E2, pp. 267-68). The First DCA summarily affirmed without explanation. (Ex. E6).

The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99, 100. This court presumes that the First DCA's summary decision adopted the lower court's reasoning. *See Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 1192 (2018).

The trial record confirms the state court's findings. Prior to Woodard's second trial, Attorney Kenny moved to prohibit the State from inquiring into Ms. Murray's sexual relationship with Woodard. The trial court denied the motion because it was without merit, not because counsel failed to object during the first trial:

MR. KENNY:  The other motion I have is there was a statement made last time from Shantecia [sic] Murray, who admitted having not only a relationship but a sexual relationship with my client, Maurice Woodard. Based upon her age at the time and my client's age, I believe that any probative value from the evidence that Ms. Ray [the prosecutor] is attempting to get in there is outweighed by the prejudicial effect that the jury might interpret from their ages and, therefore, I would ask that any questions or line of questions into their sexual relationship be prohibited. Certainly, questions into their relationship can be permitted.

THE COURT:  Does the State object to that?

MS. RAY [Prosecutor]:  I do, Your Honor. The witness in question is providing an alibi for the defendant in this case and any subject that goes to bias is completely admissible. And the fact that she is having an intimate relationship with the defendant is relevant to her credibility and bias.

THE COURT:  I agree. That motion is denied.

(Ex. E3, pp. 4-5).

Because Woodard's claim is conclusively refuted by the record, the state court's denial of relief was neither contrary to, nor an unreasonable application of, the *Strickland* standard. Woodard is not entitled to habeas relief on Ground Two.

**Ground Three**    **"Denial of Effective Assistance of Counsel in Violation of His Sixth and Fourteenth Amendment of the United States and Florida Constitution, by Trial Counsel's Failure to Permit the Defendant to Testify on His Own Behalf." (Doc. 1, p. 5)**

Woodard claims that when he and counsel discussed whether he should testify at the second trial, "counsel made the decision not to allow Petitioner to testify" for the reason that "he wanted to trick the Prosecutor." (Doc. 2, p. 18). The State asserts that this claim is procedurally defaulted because, although Woodard presented the claim to the state circuit court as Ground 3 of his second amended Rule 3.850 motion, he abandoned it in his postconviction appeal by failing to address it in his

Page 34 of 48

initial brief. (Doc. 17, pp. 12-13, 38). The State alternatively argues that the claim is without merit. (Doc. 17, pp. 38-44).

Similar to the two procedurally defaulted sub-claims discussed in Ground One above, the record establishes that Woodard's postconviction appellate brief omitted his present claim concerning counsel's advice not to testify. (Ex. E4). Because Woodard abandoned this claim in state court, and any further attempt to exhaust the claim would be futile, this ineffective assistance claim is procedurally defaulted on habeas review. *See* Discussion, *supra*, pp. 16-20. Woodard makes none of the requisite showings to excuse his default. Woodard's procedural default bars federal habeas review of Ground Three.

**Ground Four**  **"Denial of Effective Assistance of Counsel in Violation of Sixth and Fourteenth Amendment of the United States and Florida Constitution, by Trial Counsel's Failure to Object to the Introduction of Evidence." (Doc. 1, p. 5)**

Woodard claims that trial counsel was ineffective for failing to object to the admission of the letters that, he contends, the State obtained "illegally." (Doc. 2, pp. 19-21). The State asserts that this claim is procedurally defaulted because, although Woodard presented the claim to the state circuit court as Ground 4 of his second amended Rule 3.850 motion, he abandoned the claim in his postconviction appeal

by failing to address it in his initial brief. (Doc. 17, pp. 12-13, 38). The State alternatively argues that the claim is without merit. (Doc. 17, pp. 44-46).

The record establishes that Woodard's postconviction appellate brief omitted this claim (Ground 4) concerning counsel's failure to object to admission of the letters. (Ex. E4). Because Woodard abandoned this claim in state court, and any further attempt to exhaust the claim would be futile, this ineffective assistance claim is procedurally defaulted on habeas review. *See* Discussion, *supra*, pp. 16-20. Woodard makes none of the requisite showings to excuse his default. Woodard's procedural default bars federal habeas review of Ground Four.

> **Ground Five**    **"Denial of Effective Assistance of Counsel in Violation of His Sixth and Fourteenth Amendment of the United States and Florida Constitution, by Trial Counsel's Failure to Object to Co-Defendant's Counsel's Inappropriate Final Argument, Failure to Move for a Mistrial and for Failure to Move for Severance." (Doc. 1, p. 6)**

Woodard claims that his trial counsel was ineffective for failing to object, move for a mistrial and move for severance when co-defendant Denson's counsel argued in closing that, although the State presented evidence that Woodard was guilty, it presented very little evidence of Denson's guilt. (Doc. 1, p. 6; Doc. 2, p. 19). The State asserts that Woodard's claim is partially procedurally defaulted. The State explains that, although Woodard raised all three of trial counsel's omissions

(failure to object, failure to move for a mistrial, and failure to move for severance) in his second amended Rule 3.850 motion, he abandoned two issues (failure to object and failure to move for a mistrial) by omitting them from his postconviction appeal. Accordingly, these aspects of Woodard's claim are procedurally defaulted. (Doc. 17, pp. 13-14, 46). The State argues in the alternative that even assuming to Woodard's benefit that he properly exhausted all aspects of this claim, he is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 17, pp. 46-52).

### A.    Woodard Procedurally Defaulted His Sub-Claims Involving Counsel's Failure to Object and Move for a Mistrial

The record establishes that Woodard's second amended Rule 3.850 motion raised two distinct sub-claims under Ground Five. Woodard's Ground 5-A argued that counsel was ineffective for failing to object and move for a mistrial based on co-defendant counsel's closing argument. (Ex. E1, pp. 107-111). Woodard's Ground 5-B argued that counsel was ineffective for failing to move for severance based on the closing argument by his co-defendant's counsel. (Ex. E1, pp. 111-114).

After the state circuit court denied relief, Woodard appealed. Woodard's appellate brief, however, argued only Ground 5-B concerning counsel's failure to move for severance. (Doc. 17, Ex. E4, pp. i-iii (Table of Contents), pp. 8-11

(Statement of the Facts), pp. 11-13 (Points of Argument on Appeal and Summary of Argument), and pp. 27-36 (Argument)). Woodard omitted from his brief the sub-claim involving counsel's failure to object and move for a mistrial (Ground 5-A). Woodard, therefore, abandoned Ground 5-A, and this portion of his ineffective assistance claim is procedurally defaulted. *See* Discussion, *supra*, pp. 16-20.

Woodard makes none of the requisite showings to excuse his procedural default. Woodard's procedural default bars habeas review of his claim that counsel was ineffective for failing to object and move for a mistrial based on Denson's counsel's statements.

> **B. Woodard Is Not Entitled To Habeas Relief On His Sub-Claim Concerning Counsel's Failure to Move for Severance Due to Co-Defendant Counsel's Closing Argument**

Woodard faults trial counsel for failing to move for severance based on co-defendant counsel's closing argument, but neither his habeas petition, his supporting memorandum, nor his reply identifies the allegedly prejudicial statements Denson's counsel made. (*See* Docs. 1, 2, 19). Woodard's conclusory assertion that counsel made "highly prejudicial comments during final argument" which justified requesting severance, is not factual or specific, and cannot arguably justify federal habeas relief. (Doc. 1, p. 6 in ECF; Doc. 2, p. 19). This Court is not required to cull the record in search of supporting facts. *Chavez*, 647 F.3d at 1061. Woodard's

conclusory assertion that counsel was ineffective for failing to move for severance does not warrant federal habeas relief.

Even giving Woodard the benefit of gleaning his supporting facts from the record of his Rule 3.850 proceeding, he still is not entitled to habeas relief. Woodard's claim in Ground 5-B of his state postconviction motion identified the following statements by co-defendant Denson's counsel during closing argument:

> (1) "Well, Ms. Ray [the prosecutor] in her closing argument spent 25 minutes out of 26 minutes . . . talking about . . . Maurice Woodard, not Alfred Denson", (Ex. B5C, p. 471 (trial transcript));

> (2) Letters introduced into evidence "refer[ed] to Mr. Woodard, not Mr. Denson." (*Id.*, p. 471);

> (3) "There's two people who those calls [made from the victim's cell phone] can relate to, but only one who deals with the young lady in the last phone call. . . . [C]an you reasonably believe that Alfred Denson made some of these calls? There's no proof that he made any of them. There's only proof that one person made one of them. That is not Alfred Denson." (*Id.*, p. 472); and

> (4) "The evidence goes one way, not both ways. Just because another person might be there." (*Id.*, p. 473).

(*See* Ex. E1, pp. 111-114 (second amended Rule 3.850 motion).

The state circuit court denied relief for these reasons:

> Failure to object to the codefendant's closing argument, I don't know of any basis to object, even in hindsight. The – I guess the only potential issue would be to request a severance. Mr. Kenny [trial counsel] says he's not aware of any legal basis to ask for a severance.

There has been no real showing here that there was a basis for a severance. Therefore, it's not ineffective.

In support of that, and I just happened to run across this in my reading now, actually the codefendant asked for a severance during the course of the trial. That's in Volume II of Page 168 earlier during the trial. You know, severance as to one – I mean, I know maybe we didn't highlight it, because it's the codefendant asking, but if a severance was appropriate, severance would have the same effect no matter who's asking for it and Judge Cooper denied the severance requested by the codefendant. There has been no showing of prejudice. I don't find any legal basis to have granted a severance. Apparently, Judge Cooper didn't see a legal basis to grant a severance, so it's been neither ineffective nor has there been prejudice shown.

(Ex. E2, pp. 269-70).

Woodard appealed. Woodard's counseled initial brief argued that the lower court erred in finding there was no legal basis for severance, because the Florida Rules of Criminal Procedure and the Florida Supreme Court's decisions applying those rules provided a meritorious basis for severance. (Ex. E4, pp. 27-31). Woodard's argument relied exclusively on Florida Rules of Criminal Procedure 3.152(b)(1)(B) and 3.153, and the Florida Supreme Court's decisions in *Crum v. State*, 398 So. 2d 810 (Fla. 1981), *McCray v. State*, 416 So. 2d 804 (Fla. 1982), and *Bryant v. State*, 565 So. 2d 1298 (Fla. 1990). The First DCA summarily affirmed. (Ex. E6).

The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99, 100. Woodard's claim that the state court unreasonably applied *Strickland* obviously depends upon this court determining whether trial counsel's performance was deficient. To so hold, this court first would have to conclude that the state court misinterpreted state law. But this court must defer to the state's construction of its own law. *See Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining that "[o]n the one hand, the issue of ineffective assistance – even when based on the failure of counsel to raise a state law claim – is one of constitutional dimension," but, "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law.") (citations omitted).[10]

In *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338 (11th Cir. 2005), the Eleventh Circuit addressed a similar circumstance. Petitioner Herring argued that his trial counsel was ineffective for failing to make an objection, based on state law, to the introduction of evidence at the penalty phase of his trial. The state court

---

[10] *Alvord* was superseded by statute on other grounds as noted in *Hargrove v. Solomon*, 227 F. App'x 806 (11th Cir. 2007).

concluded that Herring's proposed objection would have been overruled and, therefore, counsel was not deficient. *Id*. at 1354-55. The Eleventh Circuit held: "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [Herring's counsel] done what Herring argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Id*. (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Here, as in *Alvord* and *Herring*, the state court already has answered the question of whether co-defendant counsel's statements during closing argument provided a basis for severance under Florida Rules 3.152(b)(1)(B) and 3.153: they did not. Because this court will not "second guess" the state court's state-law-based conclusion, Woodard cannot demonstrate counsel was deficient for failing to make the motion. Nor can Woodard demonstrate prejudice. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." (citing cases)); *Herring* at 1355; *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that defense counsel cannot be deemed ineffective for failing to make a state-law-based objection when the state court has already concluded that the objection would have been overruled under state law; to conclude otherwise would require the federal

habeas court to make a determination that the state court misinterpreted state law, which would violate the fundamental principle that federal habeas courts should not second-guess state courts on matters of state law).

Even looking beyond the state-law aspect of Woodard's claim, *Strickland*'s prejudice prong requires Woodard to show not just that his motion for severance was meritorious, but also that there is a reasonable probability *the result of his trial would have been different* had severance been granted. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Woodard fails to make that showing. The state trial court instructed the jury: (1) that it must consider the charges against each defendant separately, and the evidence applicable to that defendant separately; (2) that its verdict must be based on the evidence presented during the trial; and (3) that the attorneys' statements during closing arguments are not evidence. (Ex. B5C, pp. 411, 474). Woodard has not shown that there is a reasonable probability the verdict would have been different had he been tried separately, that is, upon the same evidence but absent co-defendant counsel's closing remarks.

The state court's rejection of Woodard's claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard. Woodard, therefore, is not entitled to federal habeas relief on Ground Five.

**Ground Six**        **"Whether the Trial Court Erred in Denying Post-Conviction Relief After the State Witness Who Identified Defendant as a Masked Carjacker in 2006 Recanted, Stating that He Lied When Identifying Defendant, and Where No Competent, Substantial Evidence Undermines the Recanting Witness's Credibility; and Whether Defendant Presents a Claim of 'Actual Innocence' Based upon 'Newly Discovered Evidence' in the Form of a Sworn Affidavit by Co-Defendant Marvin Cannon." (Doc. 1, p. 6)**

Woodard alleges that in 2013, Marvin Cannon recanted his trial testimony identifying Woodard as the perpetrator of the crimes. Woodard contends that Cannon's recantation is newly discovered evidence of his innocence. (Doc. 2, pp. 6-12, 21-22). Woodard presented his "newly discovered evidence" claim to the state court in his second Rule 3.850 proceeding filed on October 24, 2013. (Ex. F1, pp. 1-19). The state postconviction court denied relief after an evidentiary hearing, and the First DCA summarily affirmed. Woodard argues that the state court erred in denying postconviction relief, because the lower court unreasonably determined that Cannon's postconviction evidentiary hearing testimony was not credible, and because the state court's decision "was based on a materially incomplete analysis." (Doc. 2, pp. 22-24).

The State asserts that Woodard's actual innocence/newly discovered evidence claim is not cognizable on federal habeas review and, even if it were, is procedurally

defaulted because Woodard did not present the issue as one of federal constitutional dimension to the state court. (Doc. 17, pp. 14-17). The State asserts in the alternative that Woodard fails to meet 28 U.S.C. § 2254(d)'s demanding standard. (Doc. 17, pp. 52-54).

The reasonableness of the state court's decision (including its credibility determinations) matters only if Woodard's substantive claim is cognizable on federal habeas review. It is not. Woodard's substantive claim is that Cannon's recantation shows he is innocent. A freestanding claim of actual innocence is not cognizable on federal habeas review. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("[T]he existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled on other grounds*, 504 U.S. 1 (1992); *Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1272 (11th Cir. 2010) (""[T]his Court's own precedent does not allow habeas relief on a freestanding innocence claim in non-capital cases[.]"); *Swindle v. Davis*, 846 F.2d 706, 707 (11th Cir. 1988) ("Newly discovered evidence which goes only to the guilt or innocence of the petitioner is

not sufficient to require habeas relief."). This rule "is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Herrera*, 506 U.S. at 400-01.

The fact that Cannon recanted years after Woodard's trial does not bear on the constitutionality of Woodard's trial or incarceration. Ground Six provides no basis for federal habeas relief, and should be denied.

## IV.   A Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists

could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.    Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.  The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Maurice Woodard*, Leon County Circuit Court Case No. 2004-CF-3842, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case.

At Panama City Beach, Florida, this <u>22d</u> day of July, 2019.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**